Emma Spiro
NJ Attorney ID #: 471522024
PETRILLO KLEIN + BOXER LLP
655 Third Avenue, 12th Floor
New York, New York 10017
(212) 370-0335

*Attorneys for Defendant*
*M&D Capital Premier Billing, LLC,*
*d/b/a Alteva RCM*

Sean Hecker*
Jacob Steiner*
Madeline Verniero*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

**Admitted pro hac vice*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey, *Plaintiff*, | Case No: 2:26-cv-07537-CCC-JSA |
| v. | *Electronically filed via CM/ECF* |
| M&D Capital Premier Billing, LLC, d/b/a Alteva RCM, *Defendant*. | Return Date: October 19, 2026 |

**MEMORANDUM OF LAW OF DEFENDANT M&D CAPITAL PREMIER BILLING, LLC, D/B/A ALTEVA RCM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

## TABLE OF CONTENTS


INTRODUCTION ........ 1
BACKGROUND ........ 4
LEGAL STANDARDS ........ 8
ARGUMENT ........ 10
I. Horizon's Vacatur Claim Falls Outside the Scope of Judicial Review ........ 10
A. Fraud and Undue Means ........ 11
B. Arbitrator Partiality, Misconduct, and Excess of Authority ........ 14
II. Horizon's ERISA Claim Cannot Be Raised and Is Not Sufficiently Alleged ........ 17
A. The Court Lacks Subject Matter Jurisdiction to Consider the ERISA Claim ........ 17
B. Horizon's ERISA Allegations Fail to State a Claim ........ 21
III. Horizon's State Law Claims Are Unavailable and Inadequately Pled ........ 21
A. The State Law Claims Are Preempted and Amount to Collateral Attacks ........ 22
B. Horizon Fails to Allege a Violation of the IFPA ........ 23
C. Unjust Enrichment Is Not Available ........ 26
IV. Horizon's Claim for Declaratory and Injunctive Relief Is Not Viable ........ 27
V. The *Noerr-Pennington* Doctrine Forecloses All of Horizon's Claims ........ 28
VI. The Court Should Dismiss Horizon's Complaint With Prejudice ........ 30
CONCLUSION ........ 30

## TABLE OF AUTHORITIES

Page(s)

### CASES

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
263 F.3d 239 (3d Cir. 2001) .......... 28

*A.G. Edwards & Sons, Inc. v. McCollough*,
967 F.2d 1401 (9th Cir. 1992) .......... 12, 14

*Aetna Health Inc. v. Radiology Partners, Inc.*,
No. 24 Civ. 1343, 2026 WL 1556164 (M.D. Fla. Apr. 16, 2026) .......... 2, 12, 22, 23, 30

*Anthem Blue Cross Life & Health Ins. Co. v. HaloMD LLC*,
No. 25 Civ. 1467, 2026 WL 982629 (C.D. Cal. Apr. 9, 2026) .......... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9

*Barnes Found. v. Twp. of Lower Merion*,
242 F.3d 151 (3d Cir. 2001) .......... 28

*BCBS Healthcare Plan of Ga., Inc. v. HaloMD, Inc.*,
No. 25 Civ. 2919, 2026 WL 2017291 (N.D. Ga. July 10, 2026) .......... *passim*

*BCBS of Tex. v. HaloMD, LLC*,
No. 25 Civ. 0132, 2026 WL 1557492 (E.D. Tex. May 22, 2026) .......... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
77 F. Supp. 2d 606 (D.N.J. 2000) .......... 28

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .......... 4, 5, 30

*Campbell v. Penn. Sch. Bds. Ass'n*,
972 F.3d 213 (3d Cir. 2020) .......... 29

*Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*,
554 F.2d 1254 (3d Cir. 1977) .......... 9

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999) .......... 28

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991) ........ 29

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ........ 14

*Cohen v. Indep. Blue Cross*,
820 F. Supp. 2d 594 (D.N.J. 2011) ........ 21

*Const. Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ........ 9

*CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*,
19 F.4th 236 (3d Cir. 2021) ........ 15

*Dewey v. Volkswagen AG*,
558 F. Supp. 2d 505 (D.N.J. 2008) ........ 9

*Doe-1 v. LexisNexis Risk Sols., Inc.*,
No. 24 Civ. 4566, 2025 WL 306592 (D.N.J. Jan. 27, 2025) ........ 28

*E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*,
No. 25-2204, 2026 WL 2751786 (2d Cir. Sept. 17, 2026) ........ 4, 10

*Flores v. City of Trenton*,
No. 03 Civ. 5047, 2006 WL 521508 (D.N.J. Mar. 2, 2006) ........ 22

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ........ 9, 13, 23

*Freeman v. Pittsburgh Glass Works, LLC*,
709 F.3d 240 (3d Cir. 2013) ........ 15

*Goldman v. Citigroup Global Mkts. Inc.*,
834 F.3d 242 (3d Cir. 2016) ........ 11

*GPS of N.J., MD, P.C. v. Aetna, Inc.*,
No. 22 Civ. 5487, 2024 WL 414042 (D.N.J. Feb. 5, 2024) ........ 16

*Guardian Flight L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*,
140 F.4th 613 (5th Cir. 2025) ........ 10, 12, 18, 29

*Guardian Flight LLC v. Aetna Life Ins. Co.*,
No. 24 Civ. 0680, 2026 WL 1734646 (D. Conn. June 16, 2026) ........ 2, 22, 23

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
140 F.4th 271 (5th Cir. 2025) .......... 18

*Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*,
512 F.3d 742 (5th Cir. 2008) .......... 20

*Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*,
No. 17 Civ. 7111, 2020 WL 4932547 (D.N.J. Aug. 24, 2020) .......... 28

*Int'l Bhd. of Teamsters, Loc. 701 v. CBF Trucking, Inc.*,
No. 09 Civ. 5525, 2010 WL 2400400 (D.N.J. June 10, 2010) .......... 11

*Int'l Bhd. of Teamsters, Loc. 701 v. CBF Trucking, Inc.*,
440 F. App'x 76 (3d Cir. 2011) .......... 11

*King v. BCBS of Ill.*,
871 F.3d 730 (9th Cir. 2017) .......... 21

*Lincoln Nat'l Life Ins. Co. v. Schwarz*,
No. 09 Civ. 03361, 2010 WL 3283550 (D.N.J. Aug. 18, 2010) .......... 23

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004) .......... 9

*Med-Trans Corp. v. Cap. Health Plan, Inc.*,
700 F. Supp. 3d 1076 (M.D. Fla. 2023) .......... 4

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) .......... 7

*In re Nat'l Credit Mgmt. Grp., L.L.C.*,
21 F. Supp. 2d 424 (D.N.J. 1998) .......... 19

*Nelson v. Xacta 3000 Inc.*,
No. 08 Civ. 5426, 2009 WL 4119176 (D.N.J. Nov. 24, 2009) .......... 27

*Neuromon Pros., LLC v. Horizon BCBS*,
No. 25 Civ. 13216, 2025 WL 3653894 (D.N.J. Dec. 17, 2025) .......... 15

*Neuss v. Rubi Rose, LLC*,
No. 16 Civ. 2339, 2017 WL 2367056 (D.N.J. May 31, 2017) .......... 27

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2013) .......... 11, 16

*Papasan v. Allain*,
478 U.S. 265 (1986) ........ 9

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025) ........ 29

*PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*,
19 F.4th 308 (3d Cir. 2021) ........ 11

*Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*,
No. 18 Civ. 2608, 2019 WL 4750010 (D.N.J. Sept. 30, 2019) ........ 27

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ........ 29

*Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*,
160 F.4th 1110 (11th Cir. 2025) ........ 4, 12, 16

*In re Schering Plough Corp. Intron/Temodor Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ........ 8

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000) ........ 30

*Sikkelee v. Precision Airmotive Corp.*,
822 F.3d 680 (3d Cir. 2016) ........ 22

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ........ 16

*Suddreth v. Mercedes-Benz, LLC*,
No. 10 Civ. 5130, 2011 WL 5240965 (D.N.J. Oct. 31, 2011) ........ 27

*Sutter v. Oxford Health Plans LLC*,
675 F.3d 215 (3d Cir. 2012) ........ 16

*Swift v. Pandey*,
No. 13 Civ. 649, 2013 WL 6022093 (D.N.J. Nov. 13, 2013) ........ 27

*Technibilt Grp. Ins. Plan v. BCBS of N.C.*,
438 F. Supp. 3d 599 (W.D.N.C. 2020) ........ 21

*Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
587 F. Supp. 3d 528 (E.D. Tex. 2022) ........ 7

*Tiara Yachts, Inc. v. BCBS of Mich.*,
138 F.4th 457 (6th Cir. 2025) .......... 21

*United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC*,
812 F.3d 294 (3d Cir. 2016).......... 10, 13

*UnitedHealthcare Ins. Co. v. Maui Mem'l Emergency Med. Assocs., Inc.*,
No. 26 Civ. 0040, 2026 WL 1965882 (D. Haw. July 7, 2026) .......... 2

*UnitedHealthcare of Pa., Inc. v. Northstar Anesthesia of Pa., LLC*,
No. 25 Civ. 7187, 2026 WL 1145885 (E.D. Pa. Apr. 28, 2026) .......... 2, 17

*Vital Pharms. v. PepsiCo, Inc.*,
528 F. Supp. 3d 1295 (S.D. Fla. 2021) .......... 20

*VRG Corp. v. GKN Realty Corp.*,
641 A.2d 519 (N.J. 1994).......... 26, 27

*Wiand v. Schneiderman*,
778 F.3d 917 (11th Cir. 2015) .......... 11

**STATUTES**

9 U.S.C. § 10.......... 11, 14, 15, 22

28 U.S.C. § 1367.......... 22

29 U.S.C. § 1132.......... 18, 21

29 U.S.C. § 1185e.......... 18

42 U.S.C. § 300gg-111 .......... *passim*

42 U.S.C. § 300gg-131 .......... 4

42 U.S.C. § 300gg-132 .......... 4

42 U.S.C. § 300gg-135 .......... 4

N.J. Stat. Ann. § 2A:53A-49.......... 29

N.J. Stat. Ann. § 17:33A-4.......... 23

N.J. Stat. Ann. § 26:2SS-1 .......... 6

**REGULATIONS**

45 C.F.R. § 149.510 .......... 5, 6, 8, 16, 29

**FEDERAL RULES**

Fed. R. Civ. P. 9 .......... 9, 12, 23, 26

Fed. R. Civ. P. 12 .......... 1, 8, 9

Fed. R. Evid. 201 .......... 7

**OTHER AUTHORITIES**

*About Us*, Alteva RCM, https://www.altevarcm.com/about/ .......... 4

*Errors Identified After Dispute Closure*, Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties, Ctrs. for Medicare & Medicaid Servs. (2025), https://www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf .......... 6

*Federal Independent Dispute Resolution Operations,* 91 Fed. Reg. 33900 (June 4, 2026) .......... 6, 7, 25

H.R. Rep. No. 116-615 (2020) .......... 4

*Tips for Disputing Parties*, Ctrs. for Medicare & Medicaid Servs. (Aug. 21, 2026), https://www.cms.gov/initiatives/no-surprise-billing/overview/engaging-idr/tips-disputing-parties .......... 25

Defendant M&D Capital Premier Billing, LLC, d/b/a Alteva RCM ("Alteva"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiff Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey's ("Horizon") complaint ("Complaint"), ECF No. 1, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**INTRODUCTION**

Horizon is a health insurance company that lost payment disputes before independent arbitrators and now seeks this Court's assistance in overturning those awards. Unwilling to abide by the independent dispute resolution ("IDR") process established by Congress in the No Surprises Act ("NSA"), Horizon admits that it conceived of this lawsuit as an "answer" for its losses in the prior arbitrations. Compl. ¶ 1.

Horizon's Complaint follows a now-familiar playbook. This case is simply the latest entry in a coordinated effort by insurance companies to undermine the NSA by suing medical providers and companies like Alteva that help providers recoup the fees they have earned. Other health insurers—including those affiliated with Blue Cross Blue Shield—have brought similar claims across the country to make collateral attacks against IDR determinations (like the collateral attack levied by Horizon here). *All* seven federal courts to rule on those claims (the "Comparable Cases") have dismissed them at the pleading stage—several for lack of subject matter jurisdiction, and all either with prejudice or without leave to replead in federal court. *See BCBS of Tex. v. HaloMD, LLC*, No. 25 Civ. 0132, 2026 WL 1557492, at *9 (E.D. Tex. May 22, 2026) (in highly analogous case, insurer sued medical billing company for allegedly submitting ineligible and fraudulent IDR claims; court dismissed with prejudice); *BCBS Healthcare Plan of Ga., Inc. v. HaloMD, Inc.*, No. 25 Civ. 2919, 2026 WL 2017291, at *25 (N.D. Ga. July 10, 2026) (same); *Anthem Blue Cross Life*

*& Health Ins. Co. v. HaloMD LLC*, No. 25 Civ. 1467, 2026 WL 982629, at *11 (C.D. Cal. Apr. 9, 2026) (same; dismissing without leave to amend); *Aetna Health Inc. v. Radiology Partners, Inc.,* No. 24 Civ. 1343, 2026 WL 1556164, at *4 (M.D. Fla. Apr. 16, 2026) (insurer sued providers for allegedly submitting fraudulent IDR offers; court dismissed with prejudice); *UnitedHealthcare Ins. Co. v. Maui Mem'l Emergency Med. Assocs., Inc.*, No. 26 Civ. 0040, 2026 WL 1965882, at *5 (D. Haw. July 7, 2026) (insurer sued provider for alleged fraud in IDR process; court dismissed without leave to amend); *UnitedHealthcare of Pa., Inc. v. Northstar Anesthesia of Pa., LLC*, No. 25 Civ. 7187, 2026 WL 1145885, at *14 (E.D. Pa. Apr. 28, 2026) (insurer sued provider for alleged fraud in IDR process; court dismissed for lack of subject matter jurisdiction and allowed repleading only in state court); *see also Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 24 Civ. 0680, 2026 WL 1734646, at *7 (D. Conn. June 16, 2026) (dismissing insurer's counterclaim against provider for allegedly submitting ineligible and fraudulent IDR offers). This Court should likewise reject Horizon's attempt to upend a carefully designed statutory framework simply because it does not like the result that framework produces.

Congress enacted the NSA to protect patients by ending balance billing in certain circumstances, a practice in which the patient is responsible for the difference between the billed charges and what their health plan agreed to pay. In doing so, it created the IDR process, which allows insurance companies and providers to resolve their disputes efficiently, outside a courtroom. Independent dispute resolution entities ("IDREs") act as arbitrators, determining whether a particular dispute is eligible for resolution and then choosing one of the submitted offers in "baseball-style" arbitration.

Horizon claims Alteva unlawfully abused this process by encouraging providers to bill high amounts for their services, knowingly filing ineligible disputes in the IDR process, and wrongfully

winning high-value awards (which Horizon does not allege to have paid). Compl. ¶ 66. Yet when stripped of hyperbole and adverbs, Horizon's Complaint describes a system working as designed, and with Alteva operating squarely within that system. Horizon had every opportunity to challenge eligibility (which it often did) in connection with the coverage disputes that are outlined in the Complaint. The IDRE—not Alteva—determined, based on one of two offers, how much a provider should be paid for a particular procedure. Horizon's belated policy grievances should be channeled through congressional representatives, not recast as a federal lawsuit.

Even if the Court were inclined to entertain this health insurance company's complaints about perceived unfairness, it lacks the authority to do so—as every court considering the Comparable Cases has found. The NSA is clear that with limited exceptions, IDR awards are not subject to judicial review. And as a matter of law, Horizon cannot bring claims that collaterally attack the IDR awards. Horizon's claim for vacatur (Count IV), which it brings in the alternative, is the only potential pathway to vacate the IDR determinations. But Horizon's allegations do not fit within the NSA's narrow vacatur exceptions. Horizon's remaining claims are similarly unavailable and inadequately pled. Horizon has no right of action to bring its ERISA claim (Count II) or its claim for declaratory and injunctive relief (Count V). Its New Jersey fraud claim (Count I) is preempted by the NSA and fails to meet the particularity standard. And its unjust enrichment claim (Count III) is duplicative of other allegations and unavailing. In all events, Horizon's Complaint should be dismissed based on the *Noerr-Pennington* doctrine, which protects lawful petitioning activity from legal challenge.

This Court should follow every court in the Comparable Cases—including in cases against medical billing companies like Alteva—and dismiss the Complaint (and should do so with prejudice), bringing this latest chapter of wasteful, meritless, collateral litigation to a close.

**BACKGROUND**

The NSA, which went into effect in 2022, is aimed at combating "surprise" billing for medical services, which Congress considered a "market failure" causing "devastating financial impacts on Americans." H.R. Rep. No. 116-615, at 52–53 (2020); Compl. ¶¶ 3, 24. To that end, the NSA ensures that "certain out-of-network providers . . . are treated the same as in-network providers." *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1079 (M.D. Fla. 2023), *aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110 (11th Cir. 2025). Traditionally, for out-of-network care, patients would be "balance-bill[ed]" by their providers for the difference between the billed charges and what their health plan agreed to pay. Compl. ¶ 23. The statutory scheme bans such balance billing for specified categories of out-of-network care. 42 U.S.C. §§ 300gg-131(a), 300gg-132(a), 300gg-135; Compl. ¶ 25.

Because the NSA banned balance billing of patients in certain circumstances, it created a framework for resolving the billing disputes that would arise between health plans and out-of-network providers. 42 U.S.C. § 300gg-111(c); Compl. ¶¶ 3, 26–27; *see also E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25-2204, 2026 WL 2751786, at *1–2 (2d Cir. Sept. 17, 2026) (explaining IDR process). This framework exists outside the judicial process. Seeing as insurers typically make the initial payment determination, disputes are usually submitted by providers or by organizations on their behalf. *See* Compl. ¶¶ 18, 54. Alteva is one of those organizations: it exists "[t]o empower physicians by maximizing their financial outcomes, reducing patients' financial burden, and delivering world-class revenue strategies, all while maintaining the highest standards of compliance and care."[1] Thus, one component of its business

[1] *See About Us*, Alteva RCM, https://www.altevarcm.com/about/. The Court may consider Alteva's full mission statement from its website on this motion to dismiss because Horizon "explicitly relied upon [this webpage] in the complaint." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

is pursuing claims for reimbursement on behalf of providers through the IDR process, exercising rights expressly conferred by federal statute. *See* 42 U.S.C. § 300gg-111(c); 45 C.F.R. § 149.510; Compl. ¶¶ 3, 18.

The IDR process is designed to resolve payment disputes between insurers and providers without resorting to the expense and formality of litigation. At the outset, the parties must engage in a mandatory 30-business-day "open negotiation period" during which they attempt to resolve the payment dispute without any third-party involvement. 42 U.S.C. § 300gg-111(c)(1)(A); 45 C.F.R. § 149.510(b)(1)(i); Compl. ¶ 27. If the parties do not reach an agreement during that period, either party may initiate the federal IDR process by submitting a notice of IDR initiation within four business days after the open negotiation period ends. 42 U.S.C. § 300gg-111(c)(1)(B); 45 C.F.R. § 149.510(b)(2)(i). That notice must include an attestation that the item or service at issue is a "qualified IDR item or service" within the scope of the process. Compl. ¶¶ 27, 32; 45 C.F.R. § 149.510(b)(2)(ii)(A)(11).

Once a party initiates a dispute, certified private entities called IDREs oversee the IDR process, assess eligibility, and render determinations on the billing disputes at issue. Compl. ¶¶ 3, 27, 44–50. In the first instance, the IDRE will determine whether the claim is eligible for the federal IDR process. *Id.* ¶ 45. They do so by "review[ing] the information submitted in the notice of IDR initiation." *Id.* (citing 45 C.F.R. § 149.510(c)(1)(v)).[2] The eligibility determination turns on multiple aspects of the submitted claim, including the type of health plan and underlying services. Compl. ¶ 28.

---

1410, 1426 (3d Cir. 1997) (emphasis removed and citation omitted); *see also* Compl. ¶ 18 (quoting Alteva's website). This rule ensures that plaintiffs do not unfairly "extract[] an isolated statement from a document and plac[e] it in the complaint." *In re Burlington*, 114 F.3d at 1426.

[2] Since Horizon filed its complaint, this regulation has been updated, and a similar provision now exists at 45 C.F.R. § 149.510(c)(2).

One condition of eligibility is that a "specified state law" must not apply to the dispute. *Id.* ¶ 28(d). In other words, the federal process will not supplant a state law "provid[ing] for a method for determining the total amount payable" for out-of-network services. 42 U.S.C. § 300gg-111(a)(3)(I); *see id.* § 300gg-111(c)(1); 45 C.F.R. § 149.510(a)(2)(xi)(A); Compl. ¶¶ 28–29. New Jersey has such a "specified state law" called the New Jersey Out-of-network Consumer Protection, Transparency, Cost Containment, and Accountability Act. N.J. Stat. Ann. § 26:2SS-1 *et seq*. (the "New Jersey OON Act"); Compl. ¶ 30. Determining whether a dispute is eligible for federal IDR is nuanced. *See, e.g.*, *Federal Independent Dispute Resolution Operations*, 91 Fed. Reg. 33900, 33942 (June 4, 2026). Horizon itself hedges on eligibility, acknowledging that the absence of a particular code makes a claim "likely" (but not definitively) ineligible for the federal process. Compl. ¶ 77. As part of its eligibility assessment, the IDRE determines whether the New Jersey OON Act—rather than the federal IDR process—applies to a given dispute. *Id.* ¶¶ 45–46; 45 C.F.R. § 149.510(c)(2)(i).

If an insurer like Horizon believes a dispute is ineligible for federal IDR, it must raise an eligibility challenge during the IDR process. *See* Compl. ¶¶ 46, 99, 102, 106, 110, 118; 45 C.F.R. § 149.510(b)(2)(iii)(A)(8) (requiring respondent to provide "an explanation and documentation to support the assertion" that item is not qualified for IDR). In that scenario, the party disputing eligibility provides the relevant information through the IDR Portal, and the certified IDRE must review the notice of IDR initiation and any such information to determine whether the federal process applies. 45 C.F.R. § 149.510(c)(2). Sometimes the disputing party wins those challenges. Sometimes it loses. If the party does not win its eligibility challenge, it can re-raise the issue even after a dispute has closed. *See Errors Identified After Dispute Closure*, Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties

3–4, Ctrs. for Medicare & Medicaid Servs. (2025), https://www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf; *see also Federal Independent Dispute Resolution Operations*, 91 Fed. Reg. at 33943 n.94 (citing same).[3] In that instance, the party submits a request to the Departments of Health and Human Services, Labor, and the Treasury (collectively, the "Departments") to re-open the dispute. *Id*. Notably, Horizon does not allege that it availed itself of this reopening mechanism for any of the eligibility determinations it now challenges. Instead, despite having an avenue to re-raise precisely those eligibility objections, Horizon bypassed that process and now seeks to improperly challenge those same determinations through this lawsuit.

Once eligibility is established, the IDRE issues a determination on the billing dispute. Compl. ¶ 47. Akin to "baseball-style" arbitration, each party submits a blind offer, and the IDRE selects one of the two offers, with no opportunity for compromise or negotiation. *Id*. ¶¶ 48–49. The statute prescribes the factors the IDREs are to consider, including the comparable qualifying payment amounts in that geographic area, as well as a provider's training and experience. 42 U.S.C. § 300gg-111(c)(5)(C). IDREs are not required "to weigh any one factor or circumstance more heavily than the others." *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 541 (E.D. Tex. 2022). The NSA also prohibits IDREs from considering certain factors, such as usual and customary charges, billed amounts, and Medicare reimbursement rates. 42 U.S.C. § 300gg-111(c)(5)(D). The IDRE's determinations are binding and not subject to judicial review, absent a limited exception. *See* Compl. ¶ 50; *infra* Section I.

In addition to the ultimate payment determination, the parties also bear two fees. *Id*. ¶ 51.

[3] The Court may take judicial notice of the facts in the CMS publication because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

First, each party must pay a nonrefundable $115 administrative fee at the outset of the dispute, which cannot be recovered "even if the IDRE determines that the dispute does not qualify for IDR, or even when the initiating party later voluntarily withdraws the dispute." *Id.*[4] Second, before the IDRE's payment determination, both parties must also advance an IDRE fee ranging from $268 to $1,173. *Id.* The prevailing party is refunded its IDRE fee and bears only the administrative fee, while the non-prevailing party bears both fees. *Id.*

Despite references to a so-called "scheme," Horizon challenges just twelve IDR determinations out of the untold number of disputes it has arbitrated through the IDR process. *Id.* ¶¶ 95–123. It claims that these determinations were erroneous because Alteva allegedly (1) encouraged providers to bill what Horizon believes are high amounts for their services; (2) submitted disputes that were not eligible for the federal process; and (3) submitted disproportionately "high" payment offers. *Id.* ¶¶ 66, 95–123. Just as the NSA contemplates, Horizon admits that it challenged IDR eligibility for many of the disputes at issue. *E.g.*, *id.* ¶¶ 99, 102, 106, 110, 118. The IDRE considered those challenges and chose offers in accordance with the statutory requirements. *Id.* ¶¶ 99, 102–03, 106–07, 110–11, 118–19. Although Horizon generally alleges that it "is subject to and pays" IDR awards it claims were improperly procured, *id.* ¶ 91, there is a glaring omission: Horizon does not allege that it has paid any of the awards it now challenges.

## LEGAL STANDARDS

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a plaintiff's claims. *See In re*

[4] Since Horizon filed its complaint, this administrative fee has decreased to $15 for disputes initiated on or after June 11, 2026. *See* 45 C.F.R. § 149.510(d)(2)(ii)(B).

*Schering Plough Corp. Intron/Temodor Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). The court should resolve jurisdictional issues before considering the merits. *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977). A 12(b)(1) motion may present either a facial or factual attack on the claims at issue. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court," while a factual one argues "there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id*. at 358. This motion presents a facial attack.

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need only accept non-conclusory allegations as true. *Twombly*, 550 U.S. at 555–56; *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertion[s]' devoid of further factual enhancement" warrants dismissal. *Iqbal*, 556 U.S. at 678 (citations omitted).

Moreover, Rule 9(b)'s heightened pleading standard applies to claims "sounding in fraud." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (internal quotation marks and citations omitted). "A plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007), *abrogated on other grounds* (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)). This means Horizon must plead "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id*. Put differently, Horizon must provide "all

of the essential factual background . . . the who, what, when, where and how of the events at issue." *United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (internal quotation marks and citations omitted).

**ARGUMENT**

This Court should dismiss Horizon's Complaint with prejudice. Every other court to consider the Comparable Cases has likewise rejected efforts to circumvent the IDR process that Congress created under the NSA and disregard the determinations of the IDREs. As for Horizon's federal claims, the NSA provides only a narrow scope of judicial review over IDR determinations. The only viable option for Horizon is to plead a claim for vacatur, but it fails to do so. Horizon's ERISA claim also cannot stand, as it cannot be brought under the NSA and amounts to a collateral attack on the IDR determinations. Horizon's state law claims fare no better: they too are unavailable and insufficiently alleged. And its count for declaratory and injunctive relief is not a viable cause of action. Finally, the *Noerr-Pennington* doctrine provides an additional basis for dismissal, protecting Alteva's lawful petitioning activity.

## I. Horizon's Vacatur Claim Falls Outside the Scope of Judicial Review

In Count IV, Horizon brings, in the alternative, a claim for vacatur of the IDR determinations under 42 U.S.C. § 300gg-111(c)(5)(E). Compl. ¶¶ 145–51. The Court should dismiss that claim for lack of subject matter jurisdiction because it does not fit within the NSA's limited exceptions for judicial review.

According to the NSA, absent four discrete circumstances set forth in the Federal Arbitration Act ("FAA"), all IDR awards "shall not be subject to judicial review." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); *see Guardian Flight L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, 140 F.4th 613, 620 (5th Cir. 2025) ("*Guardian Flight II*"); *E. Coast Advanced Plastic Surgery,*

*LLC*, 2026 WL 2751786, at *1. Thus, Horizon has no basis to seek vacatur (or any judicial review) of the IDRE's determinations unless it alleges conduct within the scope of paragraphs (1) through (4) of section 10(a) of the FAA—meaning an award was procured by fraud or undue means; evident partiality or corruption in the arbitrators; arbitrator misconduct; or an excess of arbitrator power. 9 U.S.C. § 10.[5]

Horizon invokes all four of the NSA's exceptions. *See* 42 U.S.C. § 300gg-111(c)(5)(E); 9 U.S.C. § 10(a)(1)–(4); Compl. ¶¶ 145–51. In doing so, it bears a "heavy burden of demonstrating that vacatur is appropriate," *Wiand v. Schneiderman*, 778 F.3d 917, 925 (11th Cir. 2015) (internal citation omitted), as courts may vacate an arbitrator's decision "only in very unusual circumstances," *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (internal quotation marks and citations omitted).[6]

A. Fraud and Undue Means

To allege fraud, Horizon must plead "(1) the existence of fraud by clear and convincing evidence, (2) that the fraud was not discoverable with the exercise of due diligence, and (3) that the fraud materially relates to an issue in the arbitration." *Int'l Bhd. of Teamsters, Loc. 701 v. CBF Trucking, Inc.*, 440 F. App'x 76, 78 (3d Cir. 2011). Courts in this Circuit apply the same test to assess whether an award was procured by "undue means." *See Int'l Bhd. of Teamsters, Loc. 701 v. CBF Trucking, Inc.,* No. 09 Civ. 5525, 2010 WL 2400400, at *2 (D.N.J. June 10, 2010), *aff'd*, 440

[5] The NSA's incorporation of certain FAA provisions does not create an independent cause of action, as "[t]he FAA does not itself provide a federal cause of action for vacatur of an arbitration award." *Goldman v. Citigroup Global Mkts. Inc.*, 834 F.3d 242, 249 (3d Cir. 2016).

[6] To the extent the FAA's procedural requirements apply to a claim for vacatur under the NSA, Horizon has not met those requirements. *See PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313–15 (3d Cir. 2021) (clarifying that motions to vacate under section 10 must be addressed in the form of summary proceedings, not civil complaints, and are subject to a 90-day limitations period).

F. App'x 76 (3d Cir. 2011). Other courts assessing an "undue means" theory require allegations of conduct that is "immoral if not illegal," *Guardian Flight II*, 140 F.4th at 621 (quoting *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403–04 (9th Cir. 1992) (per curiam)) or "equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence," *see Reach Air Med. Servs.*, 160 F.4th at 1123–24 (citing cases).

By admitting that it challenged eligibility in multiple instances, Horizon undercuts its own theory: the alleged "fraud" was not only discoverable, but actually discovered, and already brought to the attention of the IDREs. *See A.G. Edwards*, 967 F.2d at 1404. Courts around the country, including in the Comparable Cases, have rejected fraud theories of this kind when the insurer's allegations show that the purported fraud was discoverable through due diligence before or during the IDR proceeding. In *Anthem*, the court held that the insurance company "pleaded itself out of court" because it alleged that it knew of the supposedly false eligibility attestations and objected to eligibility in every proceeding identified in the complaint. 2026 WL 982629, at *8. In *Blue Cross Blue Shield Healthcare Plan of Georgia*, the court concluded the insurer had an opportunity to object and present eligibility information in each proceeding, the IDRE considered those objections, and the insurer's dissatisfaction with the resulting eligibility determinations did not establish fraud by clear and convincing evidence. 2026 WL 2017291, at *23. And in *Aetna Health Inc.*, the court dismissed Aetna's vacatur claim based on the insurance company's own admission that it knew about the purported wrongfully submitted claims during the IDR process, as that prior knowledge was "fatal" to Aetna's ability to satisfy its heavy burden for vacatur. 2026 WL 1556164, at *3. The same is true here: Horizon had every opportunity to discover the alleged fraud and, in many of the claims at issue, already made its case to an IDRE.

Horizon also fails to meet Rule 9(b)'s heightened pleading standard, which requires a level

of precision or substantiation, *Frederico*, 507 F.3d at 200, such as "the who, what, when, where, and how" of the alleged fraud, *United States ex rel. Moore & Co.*, 812 F.3d at 307. Horizon's Complaint does not even approach satisfying these requirements. On eligibility, it alleges with no specific detail that Alteva "knowingly" submitted claims with "false and misleading statements" to meet the criteria for the federal IDR process. Compl. ¶¶ 65–66, 74. Beyond Horizon's conclusory allegations, it fails to plead any details of how it believes Alteva acted fraudulently. That is not enough to plead with particularity.

Nor were the IDRE eligibility determinations obtained through undue means. The fee structure for the IDRE process is established by statute: the parties pay administrative and IDRE fees, and the IDRE receives compensation if it issues a payment determination. Compl. ¶ 53; 42 U.S.C. § 300gg-111(c)(5)(F), (c)(8). Insofar as Horizon alleges that the IDREs have a financial incentive to find eligibility, courts have rejected that speculation as insufficient evidence of undue means. *BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *23 (declining to accept that the defendant "exploit[s]" the IDREs' financial incentive by misrepresenting eligibility). This type of structural incentive is simply "part of the IDR rules established by Congress" and cannot be said to be "akin to bad faith or bribery." *See Anthem*, 2026 WL 982629, at *8.

Moving to Horizon's theory relating to so-called "inflated" offers, *see* Compl. ¶ 84, the Court should reject Horizon's attempt to repackage its grievances about the IDR process—which requires the IDRE to choose one of two offers—into claims of fraud and undue means. Indeed, the statutory scheme requires the IDRE to select one of the parties' offers; it does *not* require the selected offer to equal the billed charge, a customary rate, the Medicare reimbursement rate, or Horizon's preferred amount. 42 U.S.C. § 300gg-111(c)(5)(A)–(D). Thus, Horizon's allegations about billed charges, Medicare reimbursement rates (such as the 16% reimbursement for assistant

surgeons), and "customar[y]" reductions (such as additional surgeries being billed at 50% of the allowance) are nothing more than distractions. *See, e.g.*, Compl. ¶¶ 68, 72. Nor does the NSA—contrary to Horizon's suggestion—impose a limit on what Alteva may offer. The NSA presumes that insurers and providers will act rationally in determining what offer to submit. Horizon posits that Alteva's offer amounts were excessive based on its chosen yardsticks, *see, e.g.*, Compl. ¶¶ 65, 82, 95–123, but the Court "need not accept as true unsupported conclusions and unwarranted inferences," *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998) (quotations omitted). That an IDRE might choose an offer that is higher than Horizon's is not wrongful, let alone fraudulent.

Horizon also ignores a far more plausible explanation than fraud for the IDR outcomes about which it complains: the IDREs disagreed with the value of Horizon's offers. Conspicuously, Horizon has not alleged with any precision how much it offered before the IDREs. As one court aptly observed: "It is highly plausible to infer that the Plaintiff engages in a consistent practice of submitting lowball offers to out-of-network providers in an effort to maximize its profits." *BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *23. From every angle, Horizon is simply a "disappointed party" seeking a "second bite at the apple." *A.G. Edwards*, 967 F.2d at 1404.

B. Arbitrator Partiality, Misconduct, and Excess of Authority

Horizon also invokes the remaining avenues for vacatur. *See* 9 U.S.C. § 10(a)(2)–(4). For the above reasons, nothing about the IDREs' eligibility determinations or payment awards constitute partiality, misconduct, or an excess of IDRE authority.

In addition, to support its theory of evident partiality, Horizon insists that "[e]ach individual IDR determination at issue involved partiality by the IDREs because their compensation depended on a finding of eligibility." Compl. ¶ 148. That allegation accurately describes the system that

Congress designed, but it is not an allegation sufficient to state a claim. *Cf. Anthem*, 2026 WL 982629, at *8 (recognizing that "financial incentives are not akin to bad faith or bribery"). Horizon also points to the IDREs' "pattern of disproportionately ruling in favor of providers" and awarding "grossly" high sums as "further evidence" of partiality. Compl. ¶ 148. But evident partiality exists "only if a reasonable person would have to conclude that [the arbitrator] was partial to one side." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 253 (3d Cir. 2013). "The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Id.* That was not the case here. A general allegation that the IDREs earned fees only after an eligible dispute proceeded—with no allegation of a relationship with Alteva or one-sided conduct in any of the challenged proceedings—does not make the IDREs' partiality "ineluctable." *See id.*; *cf. BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *23.

Similarly, in alleging arbitrator misconduct, Horizon claims that the IDREs "refused to hear evidence pertinent and material" to eligibility. Compl. ¶ 149. An arbitrator may commit "misconduct" by refusing to hear relevant evidence, depriving a party of a fair hearing, or engaging in other prejudicial "misbehavior." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 245 (3d Cir. 2021) (quotation marks omitted) (citing 9 U.S.C. § 10(a)(3)). A fair hearing means that "the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." *Id.* As explained above, Horizon admits that it had the opportunity to challenge eligibility and, in almost all the cases it now challenges, did so. *See* Compl. ¶¶ 46, 99, 102, 106, 110, 118. And Horizon identifies no specific evidence the IDREs refused to hear. Horizon's unsupported inference that the IDREs neglected to consider relevant eligibility evidence, simply because they found against Horizon, should not be credited. *Cf. Neuromon Pros., LLC v. Horizon BCBS*, No. 25 Civ. 13216, 2025 WL 3653894, at *5 (D.N.J. Dec. 17, 2025) (The

court's "role is not to determine whether [the IDRE] reached the correct payment amount or whether the Court would have selected a different offer. The NSA entrusts those determinations to certified IDR entities, not federal courts.").

Lastly, Horizon claims that "[f]or each individual IDR determination at issue, the IDREs exceeded their powers by issuing payment determinations on items and services that are not qualified IDR items and services within the scope of the NSA's IDR process." Compl. ¶ 150. An award may be unenforceable under this theory only when an arbitrator "'strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice.'" *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 220 (3d Cir. 2012) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)), *aff'd*, 569 U.S. 564 (2013). In other words, courts assess whether the arbitrator made a "good faith attempt" to perform its assigned "task"—not whether the outcome was right or wrong. *Id.* at 219–21; *see also Reach Air Med. Servs.*, 160 F.4th at 1119–20 (finding that the IDRE did not exceed its authority). Even a claim that the IDRE misapplied or failed to weigh properly the statutory factors is, at most, a mistake of law that a court "is not at liberty to review" on a motion to vacate. *See GPS of N.J., MD, P.C. v. Aetna, Inc.*, No. 22 Civ. 5487, 2024 WL 414042, at *5 (D.N.J. Feb. 5, 2024). Here, nothing suggests that the IDRE did anything but its "task" to determine eligibility. The IDRE was required to determine whether the federal IDR process applied and, if so, select one of the submitted offers. *See* 42 U.S.C. § 300gg-111(c)(5); 45 C.F.R. § 149.510(c). By Horizon's account, that is exactly what the IDRE did. The court in *Anthem* concluded that such conduct is not an excess of authority, pointing to the fact that the IDREs are authorized by the NSA and regulations to decide eligibility. 2026 WL 982629, at *8–9. That same logic applies here.

* * *

If anything, Horizon's qualms with the IDR process are policy arguments "better directed at Congress[,] which alone has the power to rewrite the NSA." *Id.* at *9; *see also BCBS of Tex.*, 2026 WL 1557492, at *6 n.6 (complaints about the IDR process "are not proper issues for the Court to resolve" and "are more appropriately addressed to policymakers in Congress and the [state] legislature"); *UnitedHealthcare of Pa., Inc.*, 2026 WL 1145885, at *1 ("We have no basis for subject matter jurisdiction to resolve an insurer's unhappiness with a Congressional mandate as some form of policy fiat. We leave those policy decisions to our elected officials."). Horizon should take its lobbying efforts elsewhere.

## II. Horizon's ERISA Claim Cannot Be Raised and Is Not Sufficiently Alleged

In Count II, Horizon brings a claim for equitable relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Compl. ¶¶ 133–39. It alleges that Alteva caused "the overpayment of funds on behalf of ERISA-governed benefit plans" and made "false attestations of eligibility." *Id.* ¶ 138. Horizon therefore asks the Court to enjoin Alteva from submitting IDR disputes subject to the New Jersey OON Act and to order "restitution" stemming from the IDR determinations at issue. *Id.* ¶ 139. The Court should deny that relief for two reasons. First, the court lacks subject matter jurisdiction because the NSA forecloses judicial review of Horizon's ERISA claim, *see generally* 42 U.S.C. § 300gg-111, and the claim is an impermissible collateral attack on the IDR determinations. Second, Horizon does not properly allege an ERISA violation.

### A. <u>The Court Lacks Subject Matter Jurisdiction to Consider the ERISA Claim</u>

The NSA provides limited avenues for judicial review, none of which allow for an ERISA claim. As the Fifth Circuit explained in two recent decisions, "the NSA explicitly *bars* judicial review of [IDRE] awards, except with respect to four scenarios incorporated from the FAA."

*Guardian Flight II*, 140 F.4th at 620 (citing *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 274–75 (5th Cir. 2025) ("*Guardian Flight I*")). To the extent Horizon seeks to bring its claim pursuant to ERISA, that is not permitted. While ERISA section 502(a)(3) provides a general private right of action for equitable relief, *see* 29 U.S.C. § 1132(a)(3), ERISA's "general jurisdictional language does not supplant the NSA's specific limitations on judicial review," *Anthem*, 2026 WL 982629, at *10.

The court in the Northern District of Georgia addressed this very question in an analogous case where, as here, a Blue Cross Blue Shield entity sued a company representing physicians in IDR to challenge IDR awards. *BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *1. The court held that "assuming that the Plaintiff's ERISA claim challenges the IDRE's determination, the Court does not have subject-matter jurisdiction to review claims for equitable relief under ERISA because the NSA does not allow such a cause of action." *Id.* at *15. The court explained that the NSA "has been codified as parallel amendments to three federal statutes with some variations within the Internal Revenue Code, ERISA, and the Public Health Service Act." *Id*. In amending ERISA directly, the NSA created a provision containing the same judicial-review bar found in the Public Health Service Act. *See* 29 U.S.C. § 1185e(c)(5)(E)(i)(II) (barring judicial review of IDR determinations "except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the FAA). Accordingly, the NSA's narrower limitation on judicial review "can be read as an exception to the broad grant under 29 U.S.C. § 1132(a)(3)." *BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *16. Because the NSA's specific and later-enacted limitation controls over ERISA's general grant of a private right of action, Horizon cannot invoke ERISA section 502(a)(3) to circumvent the NSA.

Horizon also cannot evade the NSA's limits on judicial review by claiming that eligibility

determinations are distinct from payment determinations. Because an eligibility determination underlies the payment determination, an attack on one is an attack on both. *See Anthem*, 2026 WL 982629, at *9 ("An IDRE's payment determination necessarily includes a determination of eligibility."); *BCBS of Tex.*, 2026 WL 1557492, at *4 ("Congress did not intend to impliedly provide an avenue for challenging eligibility decisions while expressly foreclosing judicial review of the IDR entities' payment determinations."); *BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *9 (concluding NSA's limitation on judicial review applies to both eligibility and payment determinations, otherwise the losing party could "run to the courts and attempt to subvert the IDRE's determination by mounting a collateral attack").

Nor does labeling the requested relief "forward-looking" solve the problem. The court in *Anthem* explained that issuing a "follow-the-law injunction" would later require contempt proceedings to decide whether an attestation was false. 2026 WL 982629, at *10. Thus, any theory permitting injunctive relief would make "end runs around the NSA's limits on judicial review." *Id.* Indeed, issuing an injunction necessarily requires the court to examine conduct that is allegedly occurring—thus subjecting the determinations to judicial review. *See In re Nat'l Credit Mgmt. Grp., L.L.C.*, 21 F. Supp. 2d 424, 439–40 (D.N.J. 1998) ("Where an injunction is sought pursuant to a statutory provision, the moving party must establish probable cause exists to believe that the statute in question is being violated and that there is some reasonable likelihood of future violations.") (internal quotation marks and citation omitted).

In addition, Horizon's ERISA claim boils down to impermissible collateral attacks on the IDR determinations themselves, which are not reviewable by the Court. *See BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *15–16 (dismissing ERISA claim in part because it arose out of IDRE eligibility determinations and therefore presented a collateral attack). A collateral attack

of an arbitration award occurs when a party "seek[s] to reverse the outcome in the subsequent proceeding or alleg[es] that the party was harmed by a wrongful act's impact on the award." *Vital Pharms. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1295, 1303 (S.D. Fla. 2021) (citation omitted). This is true even when the plaintiff's challenge is "cloaked in a variety of federal and state law claims." *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 750 (5th Cir. 2008).

Horizon's claim is inseparable from the IDR awards it identifies. To justify its request for restitution or an injunction based on the determinations, the Court would have to decide, for each determination, whether the item or service was eligible, whether Alteva's attestation was false, and whether the IDRE should have proceeded to a payment determination. Those are precisely the predicate issues the NSA assigns to the IDRE and protects from collateral review. *See BCBS of Tex.*, 2026 WL 1557492, at *4–7 (dismissing all claims as collateral attacks).

To the extent Horizon's ERISA claim seeks forward-looking relief, the underlying allegations nevertheless complain about specific IDR determinations, thus constituting a collateral attack. In *Blue Cross Blue Shield Healthcare Plan of Georgia*, the court found that despite seeking injunctive relief, the plaintiff's ERISA claim was a collateral attack because the plaintiff alleged that it was "harmed by a wrongful act's impact on the award." 2026 WL 2017291, at *16 (emphasis omitted) (quoting *Vital Pharms.*, 528 F. Supp. 3d at 1303). The court reasoned that "[t]he case or controversy brought to the Court arises out of multiple IDRE eligibility determinations." *Id.* Horizon's Complaint suffers from the same deficiency. It alleges as part of its ERISA claim that "[t]here is an actual case and controversy between Horizon and [Alteva] *relating to the claims improperly submitted and adjudicated as part of the NSA IDR process*." Compl. ¶ 139 (emphasis added). And its theory of harm rests in part on the notion that Alteva allegedly "*has caused* and continues to cause" overpayment. *Id.* ¶ 138 (emphasis added). Horizon's ERISA claim is premised

on the IDR determinations central to the Complaint and thus seeks to attack those determinations.

### B. Horizon's ERISA Allegations Fail to State a Claim

Finally, Horizon's ERISA claim fails on the merits. Section 1132(a)(3) authorizes a civil action by "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Horizon cannot meet these requirements. To bring an ERISA claim, Horizon must allege that it is a participant or beneficiary (which it cannot plausibly do) or allege that it is a fiduciary, meaning that it "possesses authority or discretionary control over the plan." *See Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 600 (D.N.J. 2011) (finding that defendant insurer was not a fiduciary).[7] Horizon generalizes its role without alleging it is a fiduciary of any single plan. Instead, it merely states that the plans it administers "*typically* delegate discretionary authority to Horizon to arrange for the administration of the IDR process," Compl. ¶ 15 (emphasis added), and that "certain health benefit plans . . . *can* delegate to Horizon discretionary authority to administer the IDR process," *id.* ¶ 134 (emphasis added). Horizon does not allege that it actually possesses such authority with respect to any plan, nor does it identify any specific plan at issue. These omissions are fatal to Horizon's ERISA claim.

## III. Horizon's State Law Claims Are Unavailable and Inadequately Pled

After the Court dismisses the federal claims, it should decline to exercise supplemental

---

[7] In other instances, Blue Cross Blue Shield affiliates have argued they are *not* fiduciaries. *See, e.g.*, *King v. BCBS of Ill.*, 871 F.3d 730, 745 (9th Cir. 2017); *Tiara Yachts, Inc. v. BCBS of Mich.*, 138 F.4th 457, 463 n.3 (6th Cir. 2025); *Technibilt Grp. Ins. Plan v. BCBS of N.C.*, 438 F. Supp. 3d 599, 604 (W.D.N.C. 2020).

jurisdiction over the remaining state law claims—Horizon's fraud claim pursuant to the New Jersey Insurance Fraud Prevention Act ("IFPA"), Count I; and Horizon's unjust enrichment claim, Count III—and dismiss the case in its entirety. *See* 28 U.S.C. § 1367(c)(3); *Flores v. City of Trenton*, No. 03 Civ. 5047, 2006 WL 521508, at *1 (D.N.J. Mar. 2, 2006) (declining to exercise supplemental jurisdiction over state law claims upon dismissing federal claims); *see also Anthem*, 2026 WL 982629, at *2 (declining to exercise supplemental jurisdiction over the insurer's state law claims after dismissing its federal claims).

If the Court maintains jurisdiction over Horizon's two state law causes of action, it should dismiss them as preempted by the NSA or for failing to state a claim.

A. <u>The State Law Claims Are Preempted and Amount to Collateral Attacks</u>

The NSA preempts Horizon's causes of action rooted in state and common law, which are impermissible "attempt[s] to end-around the NSA and FAA strictures." *See Aetna Health Inc.*, 2026 WL 1556164, at *4 (dismissing claims on preemption grounds).

Conflict preemption "occurs when a state law conflicts with federal law such that compliance with both state and federal regulations is impossible, or when a challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law." *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 688 (3d Cir. 2016) (internal citation and quotation marks omitted).

As discussed *supra*, the NSA allows for judicial review only in specific and limited circumstances. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a)(1)–(4). When a party alleges that an IDR award resulted from "fraud[] or undue means," the proper vehicle for judicial review is an action for vacatur. *See* 9 U.S.C. § 10(a); *Guardian Flight LLC*, 2026 WL 1734646, at *4. Horizon's claims based on a state law prohibiting fraud, or common law unjust enrichment,

displace the NSA's limited bases for judicial review; allowing Horizon to move forward on these claims would frustrate the purposes of the NSA. *See id.* at *4–5 (holding fraudulent misrepresentation claim was preempted); *Aetna Health Inc.*, 2026 WL 1556164, at *4 (recognizing "FAA preempts state law claims that would otherwise frustrate its purpose").

Moreover, these claims are nothing more than collateral attacks on the underlying IDR decisions. As is true here, in *Blue Cross Blue Shield of Texas*, the plaintiff insurer alleged that the defendants created a scheme to abuse the IDR processes, including by submitting ineligible services. 2026 WL 1557492, at *1. The court dismissed all of the insurer's claims, finding that it was impermissibly seeking to "relitigate issues previously decided by the IDR entities." *Id.* at *6. This Court should do the same.

### B. Horizon Fails to Allege a Violation of the IFPA

Horizon contends that Alteva "engaged in a coordinated and conspiratorial scheme" to violate the IFPA by making false or misleading statements to Horizon, the IDREs, and the Departments. *See* Compl. ¶¶ 124–132. The IFPA prohibits knowingly presenting a statement with materially false or misleading information in support of a claim for payment from an insurance policy. *See* N.J. Stat. Ann. § 17:33A-4(a); *see also Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 09 Civ. 03361, 2010 WL 3283550, at *15 (D.N.J. Aug. 18, 2010) (explaining the IFPA's elements). But in purporting to set forth how Alteva allegedly engaged in a "scheme" to violate the IFPA, Horizon does not allege *any* materially false or misleading statements—much less the "precise misconduct" required by Rule 9(b). *See Frederico*, 507 F.3d at 200 (citation omitted).

Horizon accuses Alteva of encouraging providers to "bill egregiously high amounts" for providers' services. Compl. ¶¶ 66, 127. But a bill is just a bill; there is nothing false or misleading about the amount a provider charges for a particular procedure code, nor does Horizon refer to any

applicable law that limits or sets a range on how much a provider may bill. Horizon, as it readily admits, is free to pay less than the billed charges. *See, e.g.*, *id*. ¶¶ 104–105 (alleging that Horizon paid provider substantially less than it billed). In any event, the provider's billed charge is, by law, immaterial: The NSA prohibits IDREs from considering billed charges in deciding which offer to accept in the baseball-style arbitration. *See* 42 U.S.C. § 300gg-111(c)(5)(D).

Similarly, Horizon alleges that Alteva "submit[s] inflated requests for payment" that providers "could never receive on the open market." Compl. ¶ 127. This allegation is just another complaint about a system that is working as designed. IDREs are *prohibited* from considering many of the supposed comparators that Horizon relies so heavily upon in its Complaint, including usual and customary charges, billed charges, and Medicare reimbursement rates. *See* 42 U.S.C. § 300gg-111(c)(5)(D). Rather, the NSA requires each party to submit an offer to the IDRE and, based on factors set forth in the statute, the IDRE must select one of those offers. *See id.* § 300gg-111(c)(5)(C). Whether providers could obtain the same payments "on the open market" (leaving aside how Horizon would propose defining that market) is irrelevant. The reason that IDREs more often choose Alteva's offers than Horizon's is not because they are "inflated" but likely because Horizon, much like other Blue Cross Blue Shield insurers, "engages in a consistent practice of submitting lowball offers." *See BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *23.

Next, Horizon alleges that Alteva knowingly submits ineligible claims to the IDR process, thereby "making false representations and attestations of eligibility." Compl. ¶ 127; *see also id.* ¶¶ 129–31. As Horizon acknowledges, however, whether a claim is eligible is a question for the IDRE. *See id.* ¶ 45. Horizon can raise objections to eligibility before the IDRE—and admits that it *did* raise those objections for most (but not all) of the disputes it now alleges were ineligible. *See id*. ¶¶ 99, 102, 106, 110, 118. Despite Horizon's opinions about eligibility, the IDREs found that

most of those claims were eligible. Indeed, only four claims in the Complaint were dismissed by IDREs as ineligible. *See id.* ¶¶ 102, 118, 123. For one of these dismissed claims, Horizon does not even allege that it objected to eligibility before the IDRE. *See id.* ¶ 123. That leaves just three cherry-picked claims for which Horizon's lack-of-eligibility arguments succeeded before the IDREs. These are hardly allegations to support the assertion that Alteva engaged in a vast "scheme" to submit ineligible disputes. And eligibility is not as cut-and-dry as Horizon asserts: As it notes elsewhere in its Complaint, the absence of an eligibility code in Horizon's own documents only makes it "likely"—not certain—that a claim is ineligible for federal IDR. *See id.* ¶ 77; *see also Federal Independent Dispute Resolution Operations*, 91 Fed. Reg. at 33942. The Court should therefore disregard Horizon's conclusory allegations that Alteva knowingly made false attestations on eligibility.

Finally, Horizon contends that billing multiple surgical codes for one "operative session" and submitting separate IDR disputes for each code is false and misleading. *See* Compl. ¶¶ 128, 131. Horizon does not point to any prohibition on these practices. Nor could it. *See* 42 U.S.C. § 300gg-111(c)(3)(A) (defining conditions under which disputes "*may*" be "*permitted* to be considered jointly") (emphasis added).[8] As Horizon admits, one requirement for a claim to be eligible in IDR is that it must be "covered by the patient's health benefit plan (*i.e.*, payment was not denied)." Compl. ¶ 28(a). And as the examples in the Complaint illustrate, complex surgeries often involve multiple separate billing codes for distinct portions of the procedures. *See, e.g.*, *id.* ¶ 108 (three billing codes for surgery for fractured bone). Alteva submits separate IDR claims for

[8] Indeed, CMS's own website warns of a "common mistake[]" of "[i]ncorrectly batching or bundling multiple items or services." *See Tips for Disputing Parties*, Ctrs. for Medicare & Medicaid Servs. (Aug. 21, 2026), https://www.cms.gov/initiatives/no-surprise-billing/overview/engaging-idr/tips-disputing-parties.

each billing code for the simple reason that they are separate disputes that are to be resolved independently. Horizon has not alleged anything misleading or untrue about doing so.

In short, the "scheme" that Horizon alleges Alteva carried out in violation of IFPA collapses under any scrutiny, much less the level of particularity required under Rule 9(b). Although it may be true that providers are able to obtain higher payments through IDR than by negotiating with Horizon (particularly given its low reimbursement rates) or engaging in state arbitration, *id*. ¶ 130, those are simply complaints about the system that Congress designed, not plausible allegations of fraud.

C. Unjust Enrichment Is Not Available

In bringing its unjust enrichment claim, Horizon alleges that Alteva was unjustly enriched by bringing, and winning, ineligible claims in IDR. *Id*. ¶¶ 140–44. That claim cannot proceed for three reasons.

First, once again, this claim is just another attempt to collaterally attack the decisions of the IDREs. Unjust enrichment requires an allegation that the defendant's retention of a benefit "would be unjust." *See VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). Horizon claims that Alteva made false attestations of eligibility and secured awards to which it was not entitled. Compl. ¶ 141. Yet its allegation that retention of those awards would be unjust again relies on the theory that the underlying services were ineligible for resolution by the IDREs or the awards themselves were inflated. The IDREs, however, found eligibility and chose Alteva's offers pursuant to the statutory scheme. Thus, to find for Horizon on this theory would require second-guessing those IDR determinations.

Second, this cause of action is wholly inapplicable to these circumstances. A plaintiff alleging unjust enrichment must plead "that it expected remuneration from the defendant at the

time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *See VRG Corp.*, 641 A.2d at 526. In the absence of an express or implied contract between the parties, unjust enrichment is "presented as a tort-based theory of recovery," which is not an independent cause of action. *See Nelson v. Xacta 3000 Inc.*, No. 08 Civ. 5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009). Indeed, the parties simply participated in an IDR process; Horizon cannot plausibly allege that it "expected remuneration" from Alteva. *Cf. Swift v. Pandey*, No. 13 Civ. 649, 2013 WL 6022093, at *6 (D.N.J. Nov. 13, 2013) ("Plaintiff asserts that each of the Defendants misappropriated the Company's assets, for which the Company clearly did not anticipate or expect remuneration."); *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, No. 18 Civ. 2608, 2019 WL 4750010, at *5 (D.N.J. Sept. 30, 2019) ("[A]n insurance company derives no benefit from medical services provided to its insureds; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.") (internal quotation marks omitted). Nor did Horizon provide anything of value to the providers or Alteva, and nowhere in Horizon's Complaint does it allege that it paid the challenged IDR awards.

Third, Horizon's unjust enrichment claim is duplicative, and the Court can dismiss it on that ground alone. *See Suddreth v. Mercedes-Benz, LLC*, No. 10 Civ. 5130, 2011 WL 5240965, at *7 (D.N.J. Oct. 31, 2011) (dismissing unjust enrichment claim because "claims alleging wrongful conduct . . . have already been dismissed").

Horizon's unjust enrichment claim is inadequately pled and should be dismissed.

## IV. Horizon's Claim for Declaratory and Injunctive Relief Is Not Viable

The Court must dismiss Horizon's fifth cause of action because "injunctive and declaratory relief are remedies—not independent causes of action." *Neuss v. Rubi Rose, LLC*, No. 16 Civ.

2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017); *see also Doe-1 v. LexisNexis Risk Sols.*, Inc., No. 24 Civ. 4566, 2025 WL 306592, at *1 n.1 (D.N.J. Jan. 27, 2025). Like its other claims, Horizon's request for declaratory and injunctive relief is simply another attempt to attack the unfavorable IDR determinations in another forum, a tactic that Congress expressly prohibited in the NSA.

### V. The *Noerr-Pennington* Doctrine Forecloses All of Horizon's Claims

Alternatively, the Court should dismiss the entirety of Horizon's Complaint because it violates the *Noerr-Pennington* doctrine.[9]

Arising from the First Amendment, *Noerr-Pennington* immunity protects parties from litigation pertaining to their petitioning activity. *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001). Traditionally an antitrust doctrine, the Supreme Court and the Third Circuit have extended it more broadly. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 159 (3d Cir. 2001). It protects "persons who petition all types of government entities—legislatures, administrative agencies, and courts." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999).

Alteva's IDR submissions reflect a proper exercise of its petitioning rights under the statutory framework and thus are protected by *Noerr-Pennington* immunity. The IDR process was created by Congress and is managed by the federal government. *See* 42 U.S.C. § 300gg-111. Congress created the statutory scheme, authorized the Departments to establish and oversee the process, required a federal-portal submission and eligibility screening, and made the resulting

[9] This defense may be resolved on the pleadings where, as here, the Complaint supplies the relevant facts and no factual issue remains. *See Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*, No. 17 Civ. 7111, 2020 WL 4932547, at *8 (D.N.J. Aug. 24, 2020); *see also Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 615 (D.N.J. 2000) (granting motion to dismiss because *Noerr-Pennington* protection applied).

determination binding subject only to narrow judicial review. *See id.* § 300gg-111(c); 45 C.F.R. § 149.510. And the process itself involves petitions to IDREs, which are considered "neutral arbiters" that "function more or less exactly like arbitrators." *Guardian Flight II*, 140 F.4th at 623. By all accounts, Alteva's notices, attestations, offers, and advocacy were the prescribed means of invoking and participating in a government-created dispute resolution process.

Moreover, Horizon's allegations focus exclusively on Alteva's submissions within the IDR process: the submissions underlying the determinations, the eligibility attestations, the payment offers, and the advocacy concerning eligibility. Horizon does not identify any act independent from the IDR process that supposedly caused its alleged injuries.

And Horizon cannot evade dismissal by invoking *Noerr-Pennington*'s "sham litigation" exception. That exception applies only when a party submits "objectively baseless" petitions, and does so to "dragoon the 'governmental process' itself into use as a competitive tool." *Campbell v. Penn. Sch. Bds. Ass'n*, 972 F.3d 213, 219 (3d Cir. 2020) (quoting *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991)). Alteva's submissions were not objectively baseless, given that, as Horizon admits, Alteva won the disputes about which it now complains. *See* Compl. ¶¶ 99, 102–03, 106–07, 110–11, 118–19; *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). And nothing suggests that Alteva submitted its IDR disputes as a manipulation of government process. Following the statutory scheme set forth by Congress, Alteva represented providers in their disputes with Horizon. That lawful activity should not subject Alteva to liability.[10]

---

[10] Nor should Alteva have to bear the attorney's fees incurred in defending this litigation. If Alteva prevails on its motion to dismiss, it reserves its right to seek costs and fees pursuant to New Jersey's Uniform Public Expression Protection Act ("UPEPA"), N.J. Stat. Ann. § 2A:53A-49 *et seq*. *See*

## VI. The Court Should Dismiss Horizon's Complaint With Prejudice

The Court should dismiss Horizon's Complaint with prejudice because amendment would be futile. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Horizon's core theories—its complaints about the IDREs' findings of eligibility and payment determinations—cannot support a claim for vacatur, no matter what additional facts Horizon may plead. Nor would amendment create a path for Horizon to bypass the NSA's limitations on judicial review or transform collateral attacks into viable claims. Therefore, as in the bulk of the Comparable Cases, Horizon's Complaint should be dismissed in its entirety without leave to amend. *See Anthem*, 2026 WL 982629, at *11; *BCBS Healthcare Plan of Ga.*, 2026 WL 2017291, at *24–25; *BCBS of Tex.*, 2026 WL 1557492, at *9; *Aetna Health Inc.*, 2026 WL 1556164, at *4.

## CONCLUSION

For these reasons, Alteva respectfully requests that this Court dismiss the Complaint with prejudice.

Dated: September 21, 2026

PETRILLO KLEIN + BOXER LLP

*Emma Spiro*

Emma Spiro
NJ Attorney ID #: 471522024
PETRILLO KLEIN + BOXER LLP
655 Third Avenue, 12th Floor
New York, New York 10017
(212) 370-0335

*Attorneys for Defendant M&D Capital Premier Billing, LLC, d/b/a Alteva RCM*

Sean Hecker*
Jacob Steiner*
Madeline Verniero*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

**Admitted pro hac vice*

*Paucek v. Shaulis*, 349 F.R.D. 498, 513–19 (D.N.J. 2025) (allowing UPEPA's mandatory fee-shifting provision to be invoked in federal court as an application following dismissal).